**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KATHERINE TRAMONTANO<br>190 Binns Boulevard<br>Columbus, Ohio 43204, | ) <br> ) <br> ) <br> ) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | ) <br> ) | |
| v. | ) <br> ) | **COMPLAINT FOR DAMAGES**<br>**AND INJUCTIVE RELIEF** |
| OHIOHEALTH CORPORATION<br>3535 Olentangy River Road<br>Columbus, Ohio 43214, | ) <br> ) <br> ) <br> ) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| Serve Also: | ) <br> ) | |
| OHIOHEALTH CORPORATION<br>c/o Terri W. Meldrum, Esq.<br>Registered Agent<br>3430 OhioHealth Parkway<br>Columbus, Ohio 43202, | ) <br> ) <br> ) <br> ) <br> ) | |
| Defendant. | ) <br> ) | |

Plaintiff, Katherine Tramontano, by and through undersigned counsel, states and avers the following for the Complaint against the Defendant, OhioHealth Corporation:

**PARTIES**

1. Tramontano is a resident of the City of Columbus, County of Franklin, State of Ohio.

2. OhioHealth Corporation ("OhioHealth") is a domestic corporation which conducts business at 3535 Olentangy River Road, Columbus, Ohio 43214.

3. OhioHealth was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. 126 § 12101 *et seq*.

4. OhioHealth was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 et seq.

5. OhioHealth was at all times hereinafter mentioned an employer within the meaning of 29 U.S.C. § 2601 et seq.

**JURISDICTION AND VENUE**

6. All of the material events alleged in this Complaint occurred in Franklin County.

7. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Tramontano is alleging a Federal Law Claim under The Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101 *et seq.* and The Family & Medical Leave Act ("FMLA"), 29 U.S.C § 2601, *et seq.*

8. This Court has supplemental jurisdiction over Tramontano's state law claims pursuant to 28 U.S.C. § 1367 as Tramontano's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

10. Within 300 days of the conduct alleged below, Tramontano filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2023-04135 against OhioHealth ("Tramontano EEOC Charge").

11. Tramontano dually filed the Tramontano EEOC Charge with the EEOC and the Ohio Civil Rights Commission.

12. On or about June 10, 2024, the EEOC issued a Notice of Right to Sue letter to Tramontano regarding the Tramontano EEOC Charge.

13. Tramontano received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1).

14. Tramontano has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

15. Tramontano has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

**FACTS**

16. Tramontano is a former employee of OhioHealth.

17. Tramontano was hired by OhioHealth in or about October 2016.

18. Tramontano was employed by OhioHealth in the position of Patient Support Assistant.

19. OhioHealth was, at all times hereinafter mentioned, engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year and therefore is an employer as defined in 29 U.S.C § 2611(4).

20. At all times relevant herein, Tramontano was employed by OhioHealth for at least 12 months and had at least 1,250 hours of service with OhioHealth and therefore was an "eligible employee" under FMLA, as that term is defined in 29 U.S.C. § 2611(2)(A).

21. In or around December 2022, Tramontano was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") ("Tramontano's Disability").

22. Tramontano's Disability is a mental or psychological disorder.

23. Tramontano's Disability substantially limits one or more major life activities and skills, such as poor time judgment, working, multitasking, and staying on task.

24. Tramontano has a record of Tramontano's Disability.

25. As a result of Tramontano's Disability, Tramontano is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

26. In or around December 2022, Tramontano disclosed Tramontano's Disability to OhioHealth.

27. In or around December 2022, Tramontano informed OhioHealth Administrative Nurse Manager Amber Browning that Tramontano had been diagnosed with Tramontano's Disability.

28. Ohio Health was aware that Tramontano was disabled.

29. In the alternative, OhioHealth perceived Tramontano as being disabled.

30. Despite this actual disabling condition, Tramontano was still able to perform the essential functions of Tramontano job.

31. Before December 2022, OhioHealth did not know that Tramontano had Tramontano's Disability.

32. In or around the end of February 2023, Tramontano applied for intermittent FMLA leave as reasonable accommodation for Tramontano's Disability ("FMLA Request").

33. OhioHealth denied Tramontano's FMLA Request.

34. OhioHealth did not provide Tramontano's FMLA Request.

35. OhioHealth did not provide Tramontano with an alternative accommodation in response to Tramontano's FMLA Request.

36. OhioHealth could have provided time off as a reasonable accommodation.

37. During Tramontano's employment, OhioHealth never explained to Tramontano why the First Accommodation Request was denied.

38. When a Patient Support Assistant is running late at OhioHealth, OhioHealth procedure is for Patient Support Assistant to go straight to their units to start work and then to submit a clock-in adjustment to change their clock-in time to the correct time later ("Late Procedure").

4

39. On or around March 19, 2023, Tramontano arrived late to work and followed the Late Procedure, submitting 7:05 AM as a good faith estimate of Tramontano's arrival time ("Late Arrival").

40. On or around March 31, 2023, Browning called Tramontano into a meeting in Browning's office, explaining that OhioHealth cameras verified that Tramontano arrived at 7:13 AM and not 7:05 AM during the Late Arrival.

41. Browning told Tramontano that Senior Human Resources Consultant Maryam Shahid would discuss the Late Arrival with Tramontano later on that day.

42. On or around March 31, 2023, Shahid met with Tramontano.

43. Tramontano explained to Shahid that Tramontano's error of only eight minutes in estimating the time of the Late Arrival was done in good faith.

44. Tramontano explained to Shahid that Tramontano's miscalculation of the Late Arrival was caused by Tramontano's Disability giving Tramontano poor time judgment.

45. The Late Arrival and OhioHealth's Response to the Late Arrival caused Tramontano anxiety.

46. On or around April 3, 2023, Tramontano spoke with Tramontano's therapist regarding the Late Arrival and OhioHealth's response to the Late Arrival.

47. Tramontano's therapist contacted Shahid and explained the impact of Tramontano's Disability on the Late Arrival due to Tramontano's Disability causing Tramontano to have poor time judgment.

48. Shahid told Tramontano's therapist that Tramontano should submit an accommodation request to OhioHealth.

49. On or around April 3, 2023, Tramontano submitted an accommodation request to Ohio Health through OhioHealth's online system ("First Accommodation Request").

50. Following the OhioHealth's online instructions, Tramontano's First Accommodation Request took the form of submitting Tramontano's employee identification number in an online portal as a signal to begin the interactive process.

51. Tramontano's First Accommodation Request would not cause OhioHealth an undue hardship.

52. Before denying Tramontano's First Accommodation Request, OhioHealth did not determine whether Tramontano's First Accommodation Request would cause OhioHealth an undue hardship.

53. OhioHealth have no contemporaneously created documents reflecting any effort to determine whether Tramontano's First Accommodation Request would cause an undue hardship.

54. Before denying Tramontano's First Accommodation Request, OhioHealth did not determine the cost of Tramontano's First Accommodation Request.

55. OhioHealth have no contemporaneously created documents reflecting any effort to determine the cost of Tramontano's First Accommodation Request.

56. Before denying Tramontano's First Accommodation Request, OhioHealth did not determine the cost of providing any accommodation besides Tramontano's First Accommodation Request.

57. Tramontano's First Accommodation Request was reasonable.

58. OhioHealth did not engage in any conversation with Tramontano for any alternative options for Tramontano's First Accommodation Request.

59. In response to Tramontano's First Accommodation Request, OhioHealth failed to participate in any interactive process.

6

60. OhioHealth denied Tramontano's First Accommodation Request.

61. During Tramontano's employment, OhioHealth never explained to Tramontano why the First Accommodation Request was denied.

62. On or around the morning of April 4, 2023, Tramontano noticed that OhioHealth marked off the First Accommodation Request to OhioHealth as "completed and resolved" despite there having been no interactive process regarding the First Accommodation Request.

63. On or around April 7, 2023, Browning told Tramontano that Tramontano's employment would be terminated on April 12, 2023.

64. On or around April 10, 2023, Tramontano contacted OhioHealth Workplace Accommodation Specialist Nancy Miller regarding the First Accommodation Request.

65. On or around April 12, 2023, Browning terminated Tramontano's employment at OhioHealth ("Termination").

66. OhioHealth has a progressive disciplinary policy. ("Disciplinary Policy")

67. Tramontano was not given a verbal warning.

68. Tramontano was not given a written warning.

69. Tramontano was not given a final written warning.

70. Tramontano was not given a suspension.

71. Prior to terminating Tramontano, OhioHealth never issued any written communication criticizing Tramontano for any reason.

72. OhioHealth's termination of Tramontano's employment was retaliation for Tramontano request intermittent FMLA leave.

73. OhioHealth terminated Tramontano's employment because of Tramontano's Disability.

74. The Termination constitutes FMLA retaliation.

75. The Termination constitutes disability discrimination.

76. OhioHealth knowingly skipped progressive disciplinary steps in terminating Tramontano's employment.

77. OhioHealth knowingly terminated Tramontano's employment.

78. OhioHealth knowingly took adverse employment actions against Tramontano.

79. OhioHealth knowingly took adverse actions against Tramontano.

80. OhioHealth intentionally skipped progressive disciplinary steps in terminating Tramontano.

81. OhioHealth intentionally terminated Tramontano's employment.

82. OhioHealth intentionally took adverse employment actions against Tramontano.

83. OhioHealth intentionally took adverse actions against Tramontano.

84. OhioHealth knew that skipping progressive disciplinary steps in terminating Tramontano would cause Tramontano harm.

85. OhioHealth knew that terminating Tramontano would cause Tramontano harm.

86. OhioHealth willfully skipped progressive disciplinary steps in terminating Tramontano.

87. OhioHealth willfully terminated Tramontano's employment.

88. There was a causal connection between Tramontano's Disability and the Termination.

89. There was a causal connection between Tramontano's FMLA request and the Termination.

### COUNT I: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

90. As a result of OhioHealth's unlawful acts, Tramontano has suffered, and will continue to suffer harm.

91. Tramontano restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

92. Pursuant to 29 U.S.C. § 2601 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

93. OhioHealth is a covered employer under FMLA.

94. During her employment, Tramontano qualified for FMLA leave.

95. During her employment, Tramontano attempted to request FMLA leave by asking OhioHealth if Tramontano was qualified to take FMLA leave.

96. OhioHealth unlawfully interfered with Tramontano's exercise of her rights under the FMLA

97. OhioHealth unlawfully interfered with Tramontano's exercise of her rights under the FMLA in violation of Section 105 of FMLA and section 825.220 of FMLA regulations.

98. As a direct and proximate result of OhioHealth's conduct, Tramontano is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT II: RETALIATION IN VIOLATION OF FMLA

99. Tramontano restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

100. During her employment, Tramontano was qualified to take FMLA leave.

101. During her employment, Tramontano attempted to utilize FMLA leave.

102. On or around April 12, 2023, OhioHealth retaliated against Tramontano by terminating her employment.

103. OhioHealth willfully retaliated against Tramontano in violation of 29 U.S.C. § 2615(a).

104. As a direct and proximate result of OhioHealth's wrongful conduct, Tramontano is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

**COUNT III: DISABILITY DISCRIMINATION UNDER 42 U.S.C. § 12101 *et seq.***

105. Tramontano restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

106. OhioHealth treated Tramontano differently than other similarly-situated employees based on her disabling condition.

107. On or about April 12, 2023, OhioHealth terminated Tramontano's employment without just cause.

108. OhioHealth terminated Tramontano's employment based on her disability.

109. OhioHealth violated 42 U.S.C. § 12101 *et seq.* when it discharged Tramontano based on her disability.

110. OhioHealth violated 42 U.S.C. § 12101 *et seq.* by discriminating against Tramontano based on her disabling condition.

111. As a direct and proximate result of OhioHealth's conduct, Tramontano suffered and will continue to suffer damages.

**COUNT IV: FAILURE TO ACCOMMODATE UNDER 42 U.S.C. § 12101 *et seq.***

112. Tramontano restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

113. Tramontano informed OhioHealth of her disabling condition.

114. Tramontano requested accommodations from OhioHealth to assist with her disability including intermittent FMLA leave.

115. Tramontano reached out to OhioHealth to request further reasonable accommodations.

116. Tramontano's requested accommodations were reasonable.

10

117. There was an accommodation available that would have been effective and would have not posed an undue hardship to OhioHealth.

118. OhioHealth failed to engage in the interactive process of determining whether Tramontano needed an accommodation.

119. OhioHealth failed to provide an accommodation.

120. OhioHealth violated 42 U.S.C. § 12101 *et seq.* by failing to provide Tramontano a reasonable accommodation.

121. As a direct and proximate result of OhioHealth's conduct, Tramontano suffered and will continue to suffer damages.

### COUNT V: DISABILITY DISCRIMINATION UNDER R.C. § 4112.02

122. Tramontano restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

123. OhioHealth treated Tramontano differently than other similarly-situated employees based on her disabling condition.

124. OhioHealth treated Tramontano differently than other similarly-situated employees based on her perceived disabling condition.

125. On or about April 12, 2023, OhioHealth terminated Tramontano's employment without just cause.

126. OhioHealth terminated Tramontano's employment based on her disability.

127. OhioHealth violated R.C. § 4112.02 when it discharged Tramontano based on her disability.

128. OhioHealth violated R.C. § 4112.02 by discriminating against Tramontano based on her disabling condition.

129.  As a direct and proximate result of OhioHealth's conduct, Tramontano suffered and will continue to suffer damages.

### COUNT VI: FAILURE TO ACCOMMODATE UNDER R.C. 4112.01 *et seq.*

130.  Tramontano restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

131.  Tramontano informed OhioHealth of her disabling condition.

132.  Tramontano requested accommodations from OhioHealth to use intermittent FMLA leave.

133.  Tramontano reached out to OhioHealth to begin the interactive accommodation process to request further reasonable accommodations.

134.  Tramontano's requested accommodations were reasonable.

135.  There was an accommodation available that would have been effective and would have not posed an undue hardship to OhioHealth.

136.  OhioHealth failed to engage in the interactive process of determining whether Tramontano needed an accommodation.

137.  OhioHealth failed to provide an accommodation.

138.  OhioHealth violated R.C. § 4112.02 by failing to provide Tramontano a reasonable accommodation.

139.  As a direct and proximate result of OhioHealth's conduct, Tramontano suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### DEMAND FOR RELIEF

WHEREFORE, Katherine Tramontano demands from Defendant OhioHealth the following:

(a) Issue a permanent injunction:

(i)      Requiring OhioHealth to abolish discrimination, harassment, and retaliation;

(ii)     Requiring allocation of significant funding and trained staff to implement all changes within two years;

(iii)    Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

(iv)    Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

(v)     Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) An award against Defendant of compensatory and monetary damages to compensate Tramontano for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Tramontano's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,


_____
Trisha M. Breedlove (0095852)
Gregory T. Shumaker (0095552)
David Kramer (0102366)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (614) 556-4288
Fax: (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
        greg.shumarker@spitzlawfirm.com
        david.kramer@spitzlawfirm.com

*Attorneys For Plaintiff Katherine Tramontano*

14

**JURY DEMAND**

Plaintiff Katherine Tramontano demands a trial by jury by the maximum number of jurors permitted.

_____
Trisha M. Breedlove (0095852)
Gregory T. Shumaker (0095552)
David Kramer (0102366)